UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JOHN FINNEGAN, and KATHLEEN DENNING,<br><br>Plaintiffs,<br><br>v.<br><br>WASHOE COUNTY, a political subdivision of the State of Nevada, and DOES I-X,<br><br>Defendants. | Case No. 3:17-cv-00002-MMD-WGC<br><br>ORDER |

**I.    SUMMARY**

This case concerns employment discrimination claims brought by two employees of Washoe County Regional Animal Services ("Washoe County" or "Defendant"). Before the Court is Defendant Washoe County's Motion to Dismiss (ECF No. 7) and Motion to Dismiss First Amended Complaint ("Motion") (ECF No. 11). Because Plaintiff's First Amended Complaint ("FAC") superseded its prior complaint, the Court denies Defendant's Motion to Dismiss (ECF No. 7) as moot.

The Court has reviewed Plaintiffs' response to Washoe County's Motion (ECF No. 12) and Washoe County's reply (ECF No. 15). For the reasons discussed below, the Motion is granted in part and denied in part.

In addition, Washoe County filed a Motion to Sever (ECF No. 6). Having reviewed Plaintiffs' response (ECF No. 8) and Washoe County's reply (ECF No. 9), the Court grants the Motion to Sever.

## II. BACKGROUND

Plaintiffs John Finnegan ("Finnegan") and Kathleen Denning ("Denning") filed their initial complaint on January 3, 2017. (ECF No. 1.) Plaintiffs then filed their FAC on February 2, 2017. (ECF No. 10.) In the FAC, Finnegan brings two claims under Title VII of the Civil Rights Acts, 42 U.S.C. § 2000e *et seq.*, for a sexually hostile work environment and retaliation. (*Id.* at 3-7.) Denning brings three claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Rehabilitation Act, 28 U.S.C. § 701 *et seq.*, for a hostile work environment, discrimination/failure to accommodate, and retaliation. (*Id.* at 7-10.) Both Plaintiffs bring a claim for breach of the implied covenant of good faith and fair dealing. (*Id.* at 11.) The following facts are taken from the FAC.

Finnegan began his employment with Washoe County on March 8, 2010. Soon after, his supervisor, Cindy Doak ("Doak"), began to sexually harass him by making sexually inappropriate remarks. Supervisory personnel who worked for Washoe County were aware of at least some of the sexual harassment Doak directed at Finnegan. Because Finnegan did not reciprocate Doak's advances, Doak then transformed her behavior towards Finnegan into hostility. On or around September 25, 2015, Finnegan made a complaint to Defendant's Human Resources Department concerning Doak. However, Defendant failed to conduct a thorough investigation or to implement adequate remedial action and, on June 28, 2016, issued findings that Finnegan's complaint was unsubstantiated.[1] Manager Robert Smith ("Smith"), who participated in the investigation of Finnegan's complaint against Doak, then encouraged Doak to implement retaliatory hostility against Finnegan. For instance, Doak used her supervisory authority to assign Finnegan excessive workloads while other employees did not have sufficient work to perform. Both Doak and Smith also informed other employees that Finnegan had lodged a false complaint against Doak. Finnegan was

---

[1] Both Finnegan's EEOC charge and Defendant's Motion state that his complaint against Doak was substantiated. (ECF No. 11-2 at 2; ECF No. 11 at 9.)

1 subsequently suspended as a result of this harassment and retaliatory hostility. Finnegan also states that on May 3, 2016, one of the Assistant District Attorneys for Defendant implicitly threatened him with retaliatory discipline if he refused to allow himself to be interviewed by an investigator who had the ability to subsequently testify against him.

Denning suffers from epilepsy. After Smith learned Denning suffered from epilepsy, he commenced a course of harassment against her, including: telling her she could not perform her job duties because of her disability; refusing to accommodate her need to adjust to medication by requiring her to work nights and declining to give her dispatcher support; openly referring to her as crazy; refusing to speak with and generally shunning her; informing other employees that she had epilepsy and implicitly encouraging those employees to engage in hostility against Denning based on that fact; telling other employees Denning was unable to perform her job duties because of her disability; telling other employees to stay away from her; subjecting her to excessive scrutiny; attempting to ostracize and belittle her; threatening to terminate her and subjecting her to unnecessary investigations; and maintaining a secret and separate personnel file on her and informing her and others of the existence of this file. Denning was also subjected to abusive questioning by Defendant's Human Resources personnel regarding the specifics of her disability as well as to an unwarranted and retaliatory investigation regarding contact with the District Attorney's office. Denning complained of Smith's actions but those complaints were ignored or trivialized. Denning informed Defendant of Smith's actions, but Defendant refused to properly investigate his conduct or discipline him. Cumulatively, Defendant failed to implement timely, adequate remedial action sufficient to address the harassment of Denning.

### III.  MOTION TO DISMISS

#### A.  Legal Standard

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must

1 provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555.) "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pleaded factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678-79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570. Moreover, a complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989) (emphasis in original)).

///

///

## B. Failure to Exhaust Administrative Remedies

Defendant argues that Plaintiffs' FAC must be dismissed because the allegations in the FAC go beyond the scope of the allegations detailed in Plaintiffs' respective Equal Employment Opportunity Commission ("EEOC") complaints, and therefore Plaintiffs have failed to exhaust their administrative remedies or state a claim for relief. The Court disagrees.

To the extent Plaintiffs attempt to bring claims under Title VII and the ADA, they must first have exhausted their administrative remedies. *See Josephs v. Pac. Bell,* 443 F.3d 1050, 1061 (9th Cir. 2006) (a plaintiff must file administrative charge before filing ADA suit in federal court); *Lyons v. England,* 307 F.3d 1092, 1103 (9th Cir. 2002) ("a plaintiff is required to exhaust his or her administrative remedies before seeking adjudication of a Title VII claim"). Exhaustion of administrative remedies requires that the complainant file a timely charge with the EEOC, thereby allowing the agency time to investigate the charge. *See* 42 U.S.C. § 12117; 42 U.S.C. § 2000ff–6.

In assessing whether a claim was brought before the EEOC, "[i]ncidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge." *Green v. Los Angeles Cnty. Superintendent of Sch.,* 883 F.2d 1472, 1475–76 (9th Cir.1989) (internal quotation marks and citation omitted). Additionally, the district court may only hear charges that are "within the scope of an EEOC investigation that reasonably could be expected to grow out of the allegations." *Leong v. Potter,* 347 F.3d 1117, 1122 (9th Cir.2003). A plaintiff's claims are reasonably related to allegations in the charge "to the extent that those claims are consistent with the plaintiff's original theory of the case," as reflected in the plaintiff's factual allegations and his assessment as to why the employer's conduct is unlawful. *B.K.B. v. Maui Police Dept.,* 276 F.3d 1091, 1100 (9th Cir. 2002). The court construes the EEOC charges "'with utmost liberality since they are made by those unschooled in the technicalities of formal pleading.'" *B.K.B.,* 276 F.3d at 1100 (internal quotation marks and citation omitted).

In the EEOC charge,[2] Denning selected the "continuing action" box as well as the "retaliation" and "disability" boxes, and stated that generally she is "subjected to different terms and conditions of employment." (ECF No. 11-1 at 2.) From these facts, the Court finds that the allegations in the FAC concerning a course of conduct of discrimination based on Denning's disability reasonably relate to the EEOC charge, including any subsequent failures to accommodate that may have resulted after the October 1 to November 15, 2015, time frame.[3] However, because Denning filed her complaint with the EEOC on April 5, 2016 (ECF No. 11 at 5; ECF No. 11-1 at 1), she may not bring up acts of discrimination that occurred prior to 300 days before that date.[4] *See Shea v. City & Cnty. of San Francisco*, 57 F. App'x 740, 741 (9th Cir. 2003); *see also* 42 U.S.C. § 12117(a) (stating that under the ADA, by reference to 42 U.S.C. § 2000e-5(e)(1), an aggrieved party must file a complaint within either 180 or 300 days after an alleged unlawful employment practice has occurred).

In his EEOC charge, Finnegan marked the boxes for "continuing action," "retaliation," and "sex." (ECF No. 11-2 at 2.) His charge focuses on Doak's course of alleged sexual harassment, identifies examples of her retaliatory acts, mentions his concerns that his complaints against Doak weren't adequately addressed, and claims that his being placed on disciplinary leave was an indirect result of Doak's harassment. The allegations in the FAC that go beyond the charge concern a threat of disciplinary

---

[2]Plaintiffs do not object to the EEOC charges filed as exhibits by Defendant. (*See* ECF No. 12 at 1.) Because the FAC asserts that Plaintiffs filed the EEOC charges and relies on the charges to allege that they have exhausted their administrative remedies (ECF No. 10 at 1), the Court may consider this document in ruling on Defendant's Motion. *See Lee v. Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

[3]To the extent that Defendant contends Denning is making a blatant misrepresentation in the FAC when she states that Defendant refused to accommodate her needs to adjust to medication by requiring her to work nights (ECF No. 11 at 6), the Court finds that the other allegations in the FAC allow it to construe "working nights" as working closing shifts. (*See* ECF No. 10 at 10.) So construed, the Court disagrees with Defendant that Denning failed to meet her duty of candor to the Court by referring to closing shifts ending in the evening or at night as her "working nights."

[4]The Court will not consider facts concerning acts of discrimination that occurred before the alleged onset date stated by Denning in the EEOC charge (October 1, 2015) as any discrimination prior to this date is time-barred.

1  action from the Assistant District Attorney based on Finnegan's refusal to participate in
2  the investigation into his sexual harassment complaint against Doak. Because these
3  allegations relate to the theory espoused in his EEOC charge that he was harassed and
4  retaliated against upon the basis of his sex, these allegations reasonably relate to the
5  EEOC charge. While Defendant asks the Court to strike the paragraphs (Paragraphs 13
6  and 14) concerning these allegations (ECF No. 11 at 10), the purpose of a 12(b)(6)
7  motion is not for the Court to strike selected portions of a plaintiff's complaint. Thus,
8  although the allegations in these paragraphs of the FAC may not amount to acts of
9  discrimination or adverse employment action under Title VII, Finnegan is still permitted
10 to include them.

### C. Denning's Hostile Work Environment Claim

Defendant contends that Denning has failed to state a claim for hostile work environment under the ADA. (ECF No. 11 at 7-8.)

To sufficiently allege a claim for hostile work environment,[5] a plaintiff must show that the "workplace [was] permeated with discriminatory intimidation . . . that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)) (internal quotation marks omitted). "The working environment must both subjectively and objectively be perceived as abusive." *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995). Relevant to the inquiry is the frequency, severity, and level of interference with work performance; however, the court must use a totality of the circumstances test to determine whether a plaintiff's allegations state a colorable claim. *Brooks*, 229 F.3d at 923-24 (citing *Harris*, 510 U.S. at 23). "When assessing the objective portion of a plaintiff's claim, we assume the perspective of the reasonable victim." *Id.* at 924 (citing

---

[5]Because the Ninth Circuit has implicitly found that a hostile work environment claim exists under the ADA, *see Brown v. City of Tucson*, 336 F.3d 1181, 1189-90 (9th Cir. 2003), the Court utilizes the legal framework of a hostile work environment claim under Title VII for its analysis.

*Ellison v. Brady*, 924 F.2d 872, 879 (9th Cir. 1991)). "An employer is liable for a hostile environment created by a plaintiff's co-worker if it knew or should have known about the misconduct and failed to take prompt and effective remedial action." *Westendorf v. W. Coast Contractors of Nev., Inc.*, 712 F.3d 417, 421 (9th Cir. 2013) (internal quotation marks and citation omitted).

Denning states that as a result of the "course of hostility and retaliatory hostility, integrally linked to her epilepsy," she has suffered "emotional distress and associated symptoms, fear and apprehension of loss of her employment and loss of enjoyment of life[.]" (ECF No. 10 at 10.) This demonstrates that, subjectively, Denning found the harassment to be so severe that it altered her work environment. Objectively, the FAC lists various forms of discrimination based on Denning's disability, including isolation from and ostracism by her fellow employees, failure to provide additional support for her shifts, threats of termination, and excessive scrutiny. Cumulatively, these various actions sufficiently allege a working environment permeated by hostility and discriminatory intimidation based on Denning's disability. Moreover, the FAC alleges that Defendant's remedial action was inadequate and therefore ineffective. The Court therefore finds that Denning has alleged a colorable claim for hostile work environment under the ADA.

### D. Denning's Remaining Claims

Defendant argues that the FAC's allegations that Denning asked for new and different accommodations that she did not receive are beyond the scope of the EEOC charge. (ECF No. 11 at 8-9.) The Court disagrees.

In the EEOC charge, Denning states that she asked for an accommodation on or around October 1, 2015, and was told by Smith that receiving an accommodation "would not be an issue." (ECF No. 11-1 at 2.) However, the charge does not state if the accommodation was actually granted or how long the accommodation lasted. Therefore, any subsequent failures to accommodate based on the same or a similar issue would not be beyond the scope of the EEOC charge. Moreover, despite

1  Defendant's contention that the FAC misrepresents that Denning did not receive an
2  accommodation based on the October 1, 2015, request (ECF No. 11 at 8), the Court
3  must accept as true all allegations in the FAC, including those of a failure to
4  accommodate Denning's disability at some point in time. Therefore, the Court denies
5  Defendant's Motion on Denning's remaining claims.

### E. Breach of the Implied Covenant of Good Faith and Fair Dealing

Defendant contends that the FAC's allegations regarding the implied covenant of good faith and fair dealing are a "bare bones recitation of the elements of such a claim" without "any facts to support such a claim." (ECF No. 11 at 11.) The Court agrees.

In order to state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege the existence of a contract and facts demonstrating that the defendant performed the contract in a manner that is unfaithful to the purpose of the contract or the justified expectations of the plaintiff. *Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995) (citing *Hilton Hotels v. Butch Lewis Prods.*, 808 P.2d 919, 923 (Nev. 1991)). Plaintiffs fail to identify a contract for which the implied covenant of good faith and fair dealing has been breached. Instead, the FAC states that Defendant owed an "implied duty of good faith and fair dealing by virtue of the contractual employment relationship which exists between defendant and plaintiffs." (ECF No. 10 at 11.) This statement fails to make clear whether Plaintiffs are employed by way of a particular employment contract. Plaintiffs also fail to assert facts as to how Defendant acted in bad faith in fulfilling its contractual allegations beyond the FAC's assertion that Defendant breached this duty through its "conduct, statements and omissions described [in the FAC]." (*Id.*)

The Court therefore dismisses this claim without prejudice.

### F. Facts Occurring After Filing of Original Complaint

The FAC contains additional facts not found in the original complaint concerning an incident occurring in late January 2017. Specifically, the FAC states:

> For instance, in late January, 2017, defendant notified plaintiff of the imminent killing of a dog, Sonny, which plaintiff had taken a special interest in and had successfully improved its behavior, and eligibility for

> adoption. Sonny was scheduled for adoption by an interested citizen. Nonetheless, defendant deliberately and unnecessarily killed Sonny, after taking the unusual step of calling plaintiff in for the purpose of notifying him in advance of the killing. Upon information and belief, defendant notified plaintiff for the purposes of inflicting emotional distress upon plaintiff and/or attempting to elicit an angry response from plaintiff for the purpose of creating a basis for discipline against plaintiff. Upon information and belief, Manager Smith has made statements to the effect he intends to intensify the harassment of both plaintiffs in response to the filing of this federal case.

(ECF No. 10 at 6-7.) An amended complaint may not add facts that occurred after the date that the original complaint was filed. *See Fresno Unified School Dist. v. K.U. ex rel. A.D.U.*, 980 F. Supp. 2d 1160, 1174 (E.D. Cal. 2013) ("An amended complaint under Rule 15(a) permits the party to add claims or to allege facts that arose *before the original complaint was filed*.") (emphasis added). Therefore, the Court orders that this portion of Paragraph 18 be stricken from the FAC.

### IV.  MOTION TO SEVER

Federal Rule of Civil Procedure 20(a) allows plaintiffs to join in a single action if "they assert any right to relief jointly . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and if "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a). Washoe County contends that Plaintiffs fail to meet Rule 20(a)'s first prong because Finnegan's claims relate to a discrimination based on his sex and because Denning's claims relate to discrimination based on her disability, which are completely unrelated. (ECF No. 6 at 2-3.) Although misjoinder alone "is not a ground for dismissing an action," a court "may at any time, on just terms, add or drop a party." *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 870 (9th Cir. 2013) (quoting Fed. R. Civ. P. 21). District courts have discretion in determining whether to drop a party. *See Rush v. Sport Chalet, Inc.*, 779 F.3d 973, 974 (9th Cir. 2015) (reviewing the district court's decision to sever under Rule 21 for abuse of discretion).

The Court agrees with Washoe County that each Plaintiff raises unrelated claims arising from distinct series of occurrences. Plaintiffs argue that both sets of claims are

against Robert Smith, who orchestrated retaliatory hostility against them and is the "primary actor in both cases." (ECF No. 8 at 2.) However, the FAC distinguishes Finnegan's claims from Denning's claims. Finnegan's claims are against Washoe County for failing to adequately investigate his claims of sexual harassment and retaliation by Cindy Doak. By contrast, Denning's claims are based on Smith orchestrating and leading other employees to engage in various forms of harassment, ostracism, and disparate treatment against Denning based on her disability. According to the FAC, Smith played only a minor role in the alleged retaliation against Finnegan by encouraging Doak to continue to engage in retaliation and by informing other employees that Finnegan lodged a false complaint against Doak. (ECF No. 10 at 3.) Moreover, Smith played no role in the alleged sexual harassment of Finnegan, which is the basis for Finnegan's claims of a hostile work environment and retaliation under Title VII. Thus, the only similarity between the Plaintiffs' claims is that they are both against Washoe County.

The Court therefore finds that severing this action into two separate actions is appropriate.

**V. CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of Washoe County's motions.

It is therefore ordered that Washoe County's Motion to Dismiss First Amended Complaint (ECF No. 11) is granted in part and denied in part. The Clerk is instructed to strike that portion of Paragraph 18 of the FAC identified in this Order.

Washoe County's Motion to Sever (ECF No. 6) is granted. Plaintiff Kathleen Denning will proceed separately. The Clerk is hereby directed to set up a new civil action and copy all filings from this action. The new action will remain assigned to Magistrate Judge William G. Cobb and the undersigned district court judge.

It is also ordered that Washoe County's Motion to Dismiss (ECF No. 7) is denied as moot.

DATED THIS 2nd day of August 2017.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE