UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JOHN FINNEGAN,<br><br>               Plaintiff,<br>    v.<br>WASHOE COUNTY, a political subdivision of the State of Nevada,<br><br>               Defendant. | Case No. 3:17-cv-00002-MMD-WGC<br><br>ORDER |

**I.   SUMMARY**

This case concerns employment discrimination claims brought by an employee of Washoe County Regional Animal Services ("Washoe County" or "Defendant"). Before the Court is Defendant Washoe County's Motion for Summary Judgment ("Motion") (ECF No. 41). The Court has reviewed Plaintiff John Finnegan's response to Washoe County's Motion (ECF No. 47) and Washoe County's reply (ECF No. 49). For the reasons discussed below, the Motion is granted in part and denied in part.

**II.   BACKGROUND**

Plaintiff John Finnegan filed his initial complaint on January 3, 2017.[1] (ECF No. 1.) He then filed his First Amended Complaint ("FAC") on February 2, 2017. (ECF No. 10.) In relevant part, Plaintiff brings two claims under Title VII of the Civil Rights Act of 1964,

---

[1] Plaintiff's case was originally joined with that of Kathleen Denning, but their cases were severed pursuant to the Court's order of August 2, 2017. (*See* ECF No. 35.) Ms. Denning's case is now under Case No. 3:17-cv-00463. This order does not address Ms. Denning's case, which the Court has addressed separately. *See Denning v. County of Washoe*, Case No. 3:17-cv-00463, ECF No. 60 (D. Nev. Sept. 7, 2018).

42 U.S.C. § 2000e, *et seq.* ("Title VII"), for sexual harassment that created a hostile work environment, and retaliation. (*Id.* at 3-7.) The following facts appear without dispute in the summary judgment record.

Plaintiff worked as an Animal Services Assistant at Washoe County Animal Services. (*See* ECF No. 47-1 at 6.) He was hired in March 2011. (*See id.* at 6-7.) His job responsibilities included removing deceased animals from public roadways and assisting the public when they reported stray animals. (*See id.* at 6-7.) He worked with Cynthia Doak ("Doak"),[2] who he complained made unwanted "sexual comments and innuendos" to Plaintiff for approximately four to five years—from 2011 through 2015. [3] (*See* ECF No. 41-7 at 2.) (*See id.* at 5.)

On September 21, 2015, Plaintiff complained for the first time to another Washoe County employee, Animal Services Manager Robert Smith ("Smith") that Doak was sexually harassing him. (*See* ECF Nos. 41-1 at 2, 41-2 at 2, 41-6 at 2; *see also* ECF Nos. 47-2 at 2, 47-7 at 2, 47-1 at 8-9.) Smith had Plaintiff complete a Washoe County Sexual Harassment Complaint Form, which Smith then forwarded on to Washoe County Animal Services Director Shyanne Schull ("Schull") and Washoe County's Human Resources department. (*See* ECF No. 41-1 at 2.) Washoe County's Human Resources department initiated an investigation where they interviewed various employees, including Plaintiff, and concluded in a written report dated October 14, 2015, that Doak had violated Washoe County's Sexual Harassment Policy. [4] (*See* ECF No. 41-7.)

///

---

[2]Doak's job title was Lead Animal Control Officer from 2011 to 2015, when it changed to Animal Services Field Supervisor. (*See* ECF No. 41-1 at 2.)

[3] Indeed, Washoe County concluded that Doak's conduct towards Plaintiff violated Washoe County's Sexual Harassment Policy. (*See* ECF No. 41-7 at 5.)

[4]Washoe County has a sexual harassment policy. (ECF No. 41-20.) It requires its employees to attend mandatory training on this and related policies on discrimination and harassment. (*See* ECF No. 41-2 at 2.) Plaintiff received copies of these policies and acknowledged he completed the required trainings on May 19, 2011. (*See* ECF No. 41-4.)

On October 20, 2015, Washoe County's Human Resources department sent a letter summarizing the findings of their investigation to both Doak and Plaintiff's supervisor, Schull. (ECF No. 41-8.) The letter noted that Doak was found to have violated Washoe County's Sexual Harassment Policy, and that the witnesses interviewed in the investigation felt that Doak had a negative attitude towards others. (*See id.*) Plaintiff received a similar letter on October 22, 2015. (ECF No. 41-9.) On the basis of the letter she received, Schull disciplined Doak by issuing her a Letter of Expectation explaining that her behavior towards Plaintiff violated Washoe County policy, that she could not behave as she had been behaving, and requiring her to re-take two trainings on Washoe County's policies. (*See* ECF Nos. 41-1 at 3, 41-10.)

At this point in time, Plaintiff concedes that Doak stopped harassing him sexually. (*See* ECF No. 47-1 at 14-15; ECF No. 41-5 at 7.) However, Doak continued harassing Plaintiff in other ways. (*See id.*) For example, Plaintiff alleges that Doak told other Washoe County employees that Plaintiff was "a fucking liar" and that his sexual harassment complaint "had no basis in truth"—despite Washoe County's Human Resources department having found the opposite. (*See id.* at 15; ECF No. 41-7.) This led to Plaintiff to complain to Washoe County's Human Resources department in December 2015. (*See* ECF Nos. 47-1 at 15-16, 41-1 at 3.)

Schull investigated Plaintiff's December 2015 complaint that same month, enlisting Smith's help. (*See* ECF No. 41-1 at 3.) Schull and Smith's investigation concluded that Doak's continued conduct violated Washoe County's Code of Conduct. (*See* ECF No. 41-1 at 3, 41-11.) They found that Doak "frequently [has] a negative and abusive attitude toward [her] coworkers and the public," that she acted in a negative and derogatory manner to her coworker—presumably Plaintiff—and that Doak had been unjustifiably downplaying the findings and impact of the earlier sexual harassment investigation. (*See id.*) These findings were communicated to Doak in a Letter of Reprimand. (*See id.*) Doak appealed the Letter of Reprimand to Schull. (*See* ECF No. 41-1 at 3.) Following a meeting, Schull rejected Doak's appeal. (*See id.*) Schull then issued a notice of 80-hour

suspension without pay to Doak—the penalty associated with the Letter of Reprimand—on June 30, 2016. (*See id.*) Doak grieved that suspension through her union. (*See id.*) That process ultimately resolved on January 19, 2017, where the final penalty imposed on Doak was an 8-hour suspension without pay that was held in abeyance for one year. (*See id.*)

Meanwhile, Smith referred to Plaintiff's original sexual harassment claim as "bullshit" in December 2015, which led to Schull also investigating Smith, substantiating the allegations against him, and issuing him a Letter of Expectation on February 16, 2016. (*See id.* at 3-4.)

Further, Doak continued to act against Plaintiff during the winter of 2015-16. She allegedly began "overloading" Plaintiff with calls to dispose of or relocate animals (assigning him more calls than other employees also on duty at the same time), and causing him to be assigned to calls that were geographically spread out and therefore difficult to accomplish efficiently. (*See* ECF Nos. 47-1 at 16-22, 47-10 at 2, 47-11 at 3-4.) Washoe County contends it investigated this issue and concluded that while Plaintiff may have been assigned a high volume of calls, there was no evidence that he was being targeted by anyone. (*See, e.g.*, ECF No. 41-1 at 4.) During this same time period, though the exact timing is unspecified, Washoe County Field Supervisor Robert Wooster says he heard Doak refer to Plaintiff as "worthless," "lazy," "a piece of shit," and "terrible at his job." (*See* ECF No. 47-10 at 2.) Similarly, during this same time period, though the exact timing is unspecified, Washoe County Field Supervisor Jesse Horton heard Doak refer to Plaintiff as an "idiot" and accuse him of malingering. (*See* ECF No. 47-11 at 2-3.)

This apparent tension came to a head on April 21, 2016. Plaintiff arrived at work to find that he had been assigned a volume of calls for that day he felt was unfair. (*See, e.g.*, ECF Nos. 41-1 at 4, 47-1 at 21-22.) Plaintiff says he had ten to fourteen calls assigned to him that day, though there were six or seven other officers in the office "doing absolutely nothing." (*See* ECF No. 47-1 at 22.) Plaintiff then marched into the dispatch

4

office, confronted Doak about his call volume, told Doak he was "fucking done working with" her, and left work for the rest of the day. (*See id.* at 22-23; ECF No. 41-1 at 4.)

Schull worked with Smith to investigate the April 21, 2016 incident. (*See* ECF No. 41-1 at 4.) They issued Plaintiff a Letter of Instruction for his behavior, and counted the remainder of April 21, 2016, as 'paid administrative leave,' though Plaintiff attempted to count it as 'sick leave.'[5] (*See id.*; ECF No. 47-1 at 22-23.)

Plaintiff asserts two claims for sexually hostile work environment and for retaliation. (ECF No. 10.)

## III. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court.*" Nw. Motorcycle Ass'n v. U.S. Dep't of Agric., 18 F.3d 1468*, 1471 (9th Cir. 1994). Summary judgment is appropriate when the

---

[5]The parties also discuss incidents involving animosity between Plaintiff and Smith in their briefing. For example, on July 7, 2016, Plaintiff allegedly confronted Smith and accused him of having people watch Plaintiff and told Smith that his "time here was short." (ECF No. 41-1 at 5.) The next day, July 8, 2016, Plaintiff confronted Schull because he allegedly felt he was being watched by dispatch staff on Smith's orders. (*See id.*) Plaintiff allegedly cut Schull off midsentence and said, "when are things going to change around here and when will people start telling the truth." (*See id.*) Schull also investigated these two events. (*See id.*) Schull issued Plaintiff a Written Reprimand on July 21, 2016, on the basis of this investigation, finding that Plaintiff's conduct had violated the Washoe County Code of Conduct. (*See id.*) Animosity between Plaintiff and Smith then continued. Sometime in early August 2016 Plaintiff allegedly got word that Smith was telling other Washoe County employees that Plaintiff was violent and was saying he was going to tell Plaintiff's wife, so Plaintiff returned to the dispatch office from a call relocating a goose to Virginia Lake, and confronted Smith. (*See* ECF No. 47-1 at 40-46.) The Court declines to consider evidence regarding these events because they are irrelevant to Plaintiff's claims here, which relate to sexual harassment by Doak. *See* Fed. R. Evid. 402. These incidents relate to animosity between Plaintiff and Smith based on Plaintiff's belief that Smith was having Plaintiff watched, and that Smith was saying negative things about Plaintiff. Thus, they do not tend to make any facts relevant to Plaintiff's hostile work environment and retaliation claims regarding sexual harassment by Doak more or less likely. *See* Fed. R. Evid. 401. Nor do they show that Smith took these alleged actions because of Plaintiff's gender to the extent Plaintiff lumps Smith's conduct with Doak in asserting his hostile work environment claim. *See, e.g., Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) ("Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discriminat [ion] ... because of ... sex.'").

pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id*. at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps.*, Inc., 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

///

///

## IV. DISCUSSION

The Court addresses below Washoe County's Motion with respect to each of Plaintiff's two claims. However, the Court will briefly address two threshold evidentiary issues relevant to the parties' arguments on Washoe County's Motion. First, the Court declines to consider Plaintiff's eventual termination by Washoe County on August 25, 2017, because the Court's prior order prohibited Plaintiff from raising any factual allegations that postdated the filing of Plaintiff's original complaint on January 3, 2017. (*See* ECF No. 35 at 9-10.) Thus, Plaintiff may not rely upon his eventual termination to buttress either of his claims in this case. Second, Plaintiff has presented no admissible evidence that Washoe County was aware of Plaintiff's concerns regarding Doak's sexual harassment before he filed his sexual harassment complaint with Washoe County on September 21, 2015. To the contrary, Washoe County has presented evidence that Washoe County first became aware of Plaintiff's sexual harassment allegations on September 21, 2015. (*See* ECF Nos. 41-1 at 2, 41-2 at 2, 41-6 at 2; *see also* ECF Nos. 47-2 at 2, 47-7 at 2, 47-1 at 8-9.) Therefore, the Court finds that Washoe County first knew of Plaintiff's allegations on September 21, 2015.[6] *See Bhan*, 929 F.2d at 1409 (stating that nonmoving party "must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists").

### A. Hostile Work Environment Sexual Harassment Claim

Washoe County does not contest that a hostile work environment tinged with unwanted sexual comments existed here. Instead, Washoe County moves for summary judgment on its affirmative defense to Plaintiff's hostile work environment claim, contending that it sufficiently responded to Plaintiff's sexual harassment allegations regarding Doak. (*See* ECF No. 41 at 9-17.) For the reasons explained below, the Court

---

[6]In addition, the Court notes that it declines to consider two exhibits submitted by Washoe County (ECF Nos. 41-19, 41-24), Plaintiff's EEOC/NERC charges and the Littler Mendelson memorandum, because Washoe County failed to submit an affidavit from someone with personal knowledge attesting that these documents are what they purport to be, and they are thus improperly authenticated. *See Orr*, 285 F.3d at 777.

agrees, and grants Washoe County's Motion with respect to Plaintiff's hostile work environment claim.

### 1. Whether Doak was Plaintiff's Supervisor

The parties dispute whether Doak was Plaintiff's supervisor for Title VII purposes. (*See* ECF Nos. 41 at 10-11, 47 at 15-16, 49 at 2-3.) This dispute is relevant here because if Washoe County can establish that Doak was not Plaintiff's supervisor, it is arguably easier for Washoe County to establish its affirmative defense that it sufficiently responded to Doak's sexual harassment of Plaintiff, such that Washoe County should not be held liable under Title VII. While the Court agrees with Washoe County that Doak was unlikely Plaintiff's supervisor under *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013) (*see* ECF No. 41 at 10-11), the Court assumes without deciding that Doak was Plaintiff's supervisor because the Court finds that Washoe County is entitled to the *Faragher/Ellerth* affirmative defense here.

### 2. *Faragher/Ellerth* Affirmative Defense

*Faragher/Ellerth* refers to a pair of Supreme Court cases read together to establish an affirmative defense "when the employee has been unlawfully harassed, but there has been no 'tangible employment action[;]' [then] the employer may avoid liability by proving the defense of 'reasonable care.'" *Holly D. v. Cal. Inst. of Tech.*, 339 F.3d 1158, 1167 (9th Cir. 2003). "To prevail on the affirmative defense of 'reasonable care,' an employer must prove '(a) that [it] exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by [it] or to avoid harm otherwise.'" *Id.* at 1177 (citation omitted).

Beginning the *Faragher/Ellerth* analysis, Plaintiff has presented no admissible evidence that he suffered a tangible employment action during the time period applicable to this case, and therefore Washoe County may avoid liability by showing that it exercised reasonable care. (*Compare* ECF No. 41 at 12 *with* ECF No. 47 at 16, 22.) "A tangible employment action is a significant change in employment status, 'such as hiring, firing,

failure to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.' In most cases, a tangible employment action inflicts direct economic harm." *Dennis v. Nevada*, 282 F. Supp. 2d 1177, 1183 (D. Nev. 2003) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761-62 (1998)). To the extent Plaintiff argues that Doak overloading him with calls constituted a tangible employment action, the Court disagrees. *See Dennis*, 282 F. Supp. 2d at 1183 (determining that a reassignment to more inconvenient jobs or position is insufficient to show tangible employment action). As noted, Plaintiff has presented no other admissible evidence that Washoe County took a tangible employment action against him. Thus, the Court proceeds to the next prong of the *Faragher/Ellerth* analysis.

Under the first prong of the "reasonable care" affirmative defense, "the legal standard for evaluating an employer's efforts to prevent and correct harassment is whether the employer's actions as a whole established a reasonable mechanism for prevention and correction." *Id.* at 1183-84 (internal citations and quotations omitted). Here, it is undisputed that Washoe County had a Sexual Harassment Policy in place that contained instructions on how to report harassment, that Plaintiff acknowledged receipt of the policy, and that Plaintiff took the related training. (*See* ECF Nos. 41-20, 41-2, 41-4.) Thus, Washoe County established a reasonable mechanism for prevention of sexual harassment.

However, the parties dispute whether Washoe County worked to reasonably correct Doak's sexual harassment after Plaintiff reported it. The Court agrees with Washoe County that it took reasonable corrective action in response to Plaintiff's complaint regarding Doak made on September 21, 2015. Washoe County immediately initiated an investigation that substantiated Plaintiff's allegations within approximately a month of his initial report. (*See, e.g.*, ECF No. 41-9.) Washoe County also disciplined Doak following the conclusion of the investigation. (*See, e.g.*, ECF No. 41-10.) Plaintiff conceded at his deposition that Doak's sexual harassment stopped after he complained about it. (*See* ECF No. 47-1 at 14-15.) When Plaintiff later complained that Doak was

downplaying the results of the investigation and making negative comments about Plaintiff in December 2015, Washoe County initiated another investigation and again disciplined Doak. (*See supra* § II.)

The Court is not persuaded by Plaintiff's arguments on this prong of the *Faragher/Ellerth* analysis, which the Court briefly addresses below. Plaintiff argues that Washoe County's investigation into Plaintiff's sexual harassment complaint was inadequate because Washoe County declined to interview Plaintiff (*see, e.g.*, ECF No. 47 at 19), but Washoe County *did* interview Plaintiff as part of the initial investigation (*see* ECF Nos. 47-1 at 12, 41-2 at 2). Plaintiff also argues that Washoe County's investigation was inadequate because the adequacy of the investigation depends on whether it stopped the harassment. (*See* ECF No. 47 at 20.) However, Plaintiff conceded at his deposition that Doak's sexual harassment stopped after he complained about it. (*See* ECF No. 47-1 at 14-15.) Therefore, the Court finds that Washoe County established a reasonable mechanism for prevention and correction with respect to Plaintiff's sexual harassment claim against Doak.

Turning to the final prong of the of the *Faragher/Ellerth* analysis—whether Plaintiff unreasonably failed to take advantage of the complaint procedures available to him—the Court finds that Plaintiff unreasonably waited approximately four to five years to complain about Doak's conduct. (*See* ECF Nos. 41-6 at 3, 41-7 at 3.) Four years is an unreasonably long time in this context. *See Dennis*, 282 F. Supp 2d at 1179-80, 1184-85 (finding that waiting approximately three months to file a complaint was too long); *Holly D.*, 339 F.3d at 1178-79 (finding that waiting two years was too long). Thus, the Court finds that Washoe County is entitled to the *Faragher/Ellerth* affirmative defense. Summary judgment is therefore granted in favor of Washoe County and against Plaintiff as to his hostile work environment claim.

**B.    Retaliation Claim**

To prevail on a retaliation claim, a plaintiff must first establish a *prima facie* case of retaliation by demonstrating: (1) he or she engaged in a protected activity; (2) her or she

suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action. *See Dawson v. Entek*, 630 F.3d 928, 936 (9th Cir. 2011). "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). "If a plaintiff establishes a prima facie case of unlawful retaliation, the burden shifts to the defendant employer to offer evidence that the challenged action was taken for legitimate, non-discriminatory reasons. If the employer provides a legitimate explanation for the challenged decision, the plaintiff must show that the defendant's explanation is merely a pretext for impermissible discrimination." *See Dawson*, 630 F.3d at 936 (citations omitted).

### 1. Prima Facie Case

Here, Washoe County concedes that Plaintiff engaged in a protected activity when he filed his sexual harassment complaint against Doak on September 21, 2015. (*See* ECF No. 41 at 18.)

#### a. Adverse Employment Actions

The Court now turns to the adverse employment action prong of Plaintiff's *prima facie* case for retaliation. An adverse employment action is "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1242-43 (9th Cir. 2000).

Plaintiff argues that he suffered several adverse employment actions:[7] (1) his receipt of the Letter of Instruction following the April 21, 2016 incident (*see* ECF No. 47 at 16-17); (2) Doak's negative comments about Plaintiff to others (*see, e.g.*, *id.* at 22); and (3) Doak's assignment of a higher than average call volume to Plaintiff (*see, e.g.*, *id.*). The Court considers each of these three alleged adverse employment actions in turn.

---

[7]Again, the Court will not consider Plaintiff's eventual termination because of the Court's prior order. *See supra* § IV.

11

With respect to Plaintiff's receipt of the Letter of Instruction following the April 21, 2016 incident, Washoe County argues this is not an adverse employment action because the letter itself states it is "non-disciplinary" in nature. (*See* ECF No. 41 at 19.) Plaintiff counters that the Letter of Instruction and the punishment assigned therein is not actually any different from the Letter of Expectation sent to Doak following the initial sexual harassment investigation, which Washoe County characterized as disciplinary in nature. (*See* ECF No. 47 at 16-17.) Therefore, Plaintiff insists that the Letter of Instruction is also disciplinary in nature. (*See id.*) The Court agrees with Plaintiff on this point; the titles of the letters appear to indicate a distinction without a difference.

Further, with respect to the negative things that Doak said about Plaintiff to others, the Court finds as a matter of law that these actions do not constitute adverse employment actions. *See Ray*, 217 F.3d at 1241 (stating that "'mere ostracism' by co-workers does not constitute an adverse employment action").

However, being given a more burdensome work schedule may constitute an adverse employment action. *See Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 869 (9th Cir. 1996), *as amended on denial of reh'g* (Apr. 22, 1996), *as amended on denial of reh'g* (June 3, 1996). A material, factual dispute exists between the parties as to whether Doak assigned Plaintiff higher than average call volumes to retaliate against him for filing his sexual harassment complaint, or for some legitimate reason. (*Compare* ECF Nos. 47-1 at 16-22, 47-10 at 2, 47-11 at 3-4 *with*, *e.g.*, ECF No. 41-1 at 4.)

### b. Causal Link

Construing the facts in the light most favorable to Plaintiff, the Court finds there is a causal link between Plaintiff's protected activity—complaint of sexual harassment by Doak—and the two adverse employment actions based on their proximity in time. *See Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (noting in case where three months between protected activity and adverse employment action was found sufficiently proximate to infer causation that six months may be sufficiently proximate for a court to infer retaliatory motive). While it is difficult to say based on the record exactly when Doak

1 assigned Plaintiff higher than average call volumes, these instances occurred sometime
2 between September 21, 2015, and April 21, 2016. Thus, they are close enough in time
3 as to conceivably be linked. Further, it is also conceivable that Doak would assign Plaintiff
4 more, and more difficult, calls as a way to retaliate against him for filing a complaint
5 against her.

### 2. Legitimate Business Reason and Pretext

Of the two adverse employment actions supporting Plaintiff's prima facie case, the Court agrees with Washoe County that the Letter of Instruction regarding the April 21, 2016 incident was issued for a legitimate, nondiscriminatory reason. (*See* ECF No. 41 at 20-22.) Plaintiff admitted to shouting at Doak that he was "fucking done working with her" and abruptly leaving work. (*See* ECF No. 47-1 at 22-23; ECF No. 41-1 at 4.) This behavior is uncivil and could merit a citation under Washoe County's policy. Further, Plaintiff does not argue that Plaintiff's receipt of the Letter of Instruction regarding the April 21, 2016 incident was pretextual, and thus leaves Washoe County's proffered nondiscriminatory reason unrebutted. Thus, the Court finds that Plaintiff's receipt of the Letter of Instruction following the April 21, 2016 incident does not constitute an adverse employment action.

Washoe County fails to adequately articulate any legitimate non-retaliatory business reasons for Doak assigning disproportionately more calls to Plaintiff. As such, Washoe County fails to carry its burden in seeking summary judgment. Thus, Plaintiff's retaliation claim against Washoe County may proceed only with respect to the increased call volume that Doak assigned to Plaintiff on the theory that Doak's assignment of additional calls to Plaintiff constituted retaliation for the sexual harassment complaint he filed against Doak.

### V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of Washoe County's Motion.

It is therefore ordered that Washoe County's Motion for Summary Judgment (ECF No. 41) is granted in part and denied in part. Summary judgment is granted in favor of Washoe County as to Plaintiff's hostile work environment claim and denied as to Plaintiff's retaliation claim.

DATED THIS 14th day of September 2018.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE